UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WALTER ZAWISLAK, MD, | § |
| | § |
| *Plaintiff*, | § |
| | § |
| v. | §     CIVIL ACTION H-11-1335 |
| | § |
| MEMORIAL HERMANN HOSPITAL SYSTEM, | § |
| | § |
| *Defendant*. | § |

**MEMORANDUM AND ORDER**

Pending before the court is defendant's amended motion to dismiss. Dkt. 7. After review of the motion, the response, the reply, and the applicable law, defendant's motion to dismiss is DENIED for the reasons stated below.

**BACKGROUND**

Plaintiff Walter Zawislak is a physician who maintained medical staff privileges at Memorial Hermann Hospital until Memorial Hermann suspended his privileges on or about February 18, 2010. Dr. Zawislak's various claims arise from the suspension of his clinical privileges to treat patients at Memorial Hermann. Dr. Zawislak alleges that on two occasions unstable emergency room patients were transferred from Memorial Hermann to another trauma center because Memorial Hermann's on-call trauma surgeon was either unavailable or unqualified to address the patient's injuries. Dkt. 4. In retaliation for reporting the on-call trauma surgeons' conduct to the Emergency Department Medical Director and the Root Cause Analysis Committee, Memorial Hermann allegedly conducted a peer review of Dr. Zawislak, resulting in allegations of substandard care. Dkt. 8 at 4. According to Dr. Zawislak, as a result of Memorial Hermann's peer review, his medical staff privileges were suspended and his employer, Team Health, terminated his employment. Dkt. 4 at 5.

On April 8, 2010 Memorial Hermann published to the National Practitioner's Data Bank (NPDB) that it had taken an adverse action against Dr. Zawislak for substandard care. *Id*. at 7. Dr. Zawislak alleges that he disputed the publication and requested its removal by mailing a certified letter to the Secretary of Health & Human Services on January 14, 2011. *Id*. Dr. Zawislak has not alleged that he received a response from the Secretary of Health & Human Services regarding his complaint.

Dr. Zawislak argues that his privileges were suspended for substandard care and reported to the NPDB in retaliation for disclosing and objecting to Memorial Hermann's alleged Emergency Medical Treatment and Active Labor Act (EMTALA) violations. Dkt 1 at 9. Dr. Zawislak also asserts a state law claim of defamation against Memorial Hermann for publishing in the NPDB that it took an adverse action against Plaintiff's clinical privileges for substandard care. *Id*. at 6.

## ANALYSIS

Defendant moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Specifically, defendant claims the case should be dismissed in its entirety because: (1) Dr. Zawislak failed to exhaust his administrative remedies; (2) he failed to allege facts sufficient to overcome the statutory presumption that Memorial Hermann is immune from liability pursuant to the Health Care Quality Improvement Act, 42 U.S.C. § 11101; and (3) he has failed to state a claim for relief under EMTALA's anti-retaliation provision. Dkt. 9.

Federal Rule of Civil Procedure 12(b)(6) allows dismissal if a plaintiff fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). In considering 12(b)(6) motions, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court

does not look beyond the face of the pleadings when determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). In order to survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 127 S.Ct. 1955 (2007). Motions to dismiss brought under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) are subject to the same standard of review. *Benton v. Unites States*, 960 F.2d 19, 21 (5th Cir. 1992). However, the party with the burden of proof differs. The movant bears the burden of proof on a 12(b)(6) motion, whereas the party asserting subject matter jurisdiction bears the burden on a 12(b)(1) motion. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

**1. Rule 12(B)(1) - Exhaustion**

Memorial Hermann argues that plaintiff's claim of defamation arising from the National Practitioner Data Bank (NPDB) report is subject to dismissal for failure to exhaust administrative remedies. Dkt. 6 at 13. Memorial Hermann contends that Dr. Zawislak has not alleged any facts demonstrating that before filing suit he followed the procedures set out in the applicable federal regulation, 45 C.F.R. § 60.16(b), to dispute the accuracy of Memorial Hermann's report. *Id.* The regulation permits a physician to dispute the accuracy of such a report by filing a written dispute with the Secretary of Health within sixty days of receiving the report. 45 C.F.R. § 60.16(b). Dr. Zawislak alleges that he mailed a certified letter to the Secretary of Health & Human Services (HHS) on January 14, 2011. He does not indicate whether he received a response from HHS. Dkt. 4 at 7. Additionally, it is clear from the complaint that more than sixty days lapsed between plaintiff's receipt of the NPDB report and the time he sent the Secretary of Health. In fact, Dr. Zawislak sent a letter to Memorial Hermann on October 14, 2010 requesting the report's removal, and then waited

3

120 days before sending a similar letter to the Secretary of HHS. Dkt. 4 at 7. Thus, Dr. Zawislak did not follow the procedures set out in 45 C.F.R. § 60.16(b).

However, disputing the accuracy of the report with the Secretary of Health is not a prerequisite to filing suit. Although Congress authorized the Secretary to "promulgate by regulation . . . procedures in the case of disputed accuracy of the information", 42 U.S.C. § 11136, the Department of Health and Human Services couched its regulation in permissive language, providing that plaintiff "may" dispute the accuracy of a report by requesting a revision of the report. 45 C.F.R. § 60.16(b). Thus, resort to administrative remedies is not required before filing suit.

The defendant argues that administrative exhaustion is necessary in order to contest the accuracy of the NPDB report, Dkt. 6 at 15, but, Dr. Zawislak does not seek the correction of the report. Instead, he complains of harm he has suffered as a result of the already-filed report. Dkt. 4 at 7. Because procedures under 45 C.F.R. § 60.16 only provide for the correction of a report, the Court does not believe that administrative exhaustion is required before Plaintiff may proceed with claims asserted in the instant complaint. Therefore, defendant's motion to dismiss for failure to exhaust administrative remedies must be denied.

**2. Immunity Under the Healthcare Quality Improvement Act**

Defendant argues it is shielded from liability under all of the theories advanced in Dr. Zawislak's complaint in light of the immunity conferred under the federal Health Care Quality Improvement Act (HCQIA), 42 U.S.C. § 11101 *et seq.*, for decisions reached in the defendant's professional review process. Dkt. 6 at 19. The HCQIA was enacted to provide for effective peer review and interstate monitoring of incompetent physicians, and also to provide qualified immunity for peer review participants. *See Poliner v. Texas Health Sys.*, 536 F.3d 368, 376 (5th Cir. 2008). In

furtherance of the latter goal, the HCQIA states that if a "professional review action of a professional review body meets certain [specified] standards, then (A) the professional review body, (B) any person acting as a member or staff to the body, (C) any person under contract or other formal agreement with the body, and (D) any person who participates with or assists the body with respect to the action, shall not be liable in damages under any law of the United States or any State ... with respect to the action." *See* 42 U.S.C. § 11111(a) (2001).

In order for immunity to apply under the HCQIA, the professional review action must be taken:

> (1) in the reasonable belief that the action was in furtherance of quality health care,
>
> (2) after a reasonable effort to obtain the facts of the matter,
>
> (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
>
> (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3) [above].

*See* 42 U.S.C. § 11112(a).

The Act also includes a presumption that a professional review action meets each of the four prongs of Section 11112(a), unless the plaintiff can rebut the presumption by a preponderance of the evidence. *See id.*; *see also Poliner*, 536 F.3d at 376.

While it is true that Memorial Hermann enjoys a presumption that its professional review action met the fairness and due process requirements, the Court is persuaded that Dr. Zawislak has alleged sufficient facts to suggest he may be able to rebut the presumption by a preponderance of the evidence. Accepting the factual allegations contained in the complaint as true, the complaint

plausibly alleges that the review committee did not have a reasonable belief that terminating Dr. Zawislak's privileges was warranted by the facts known.

More specifically, Dr. Zawislak has pled facts alleging that Memorial Hermann terminated his privileges in retaliation against his EMTALA-protected report that on-call physicians at Memorial Hermann transferred individuals before providing stabilizing treatment. *See* Dkt. 4 at 5-6. If Memorial Hermann acted on this basis, a trier of fact could find that such a decision was not grounded in considerations of quality health care, and was instead intended to protect Memorial Hermann's on-call physicians and other medical personnel. Further, the complaint alleges that the review committee did not consider the actions of the on-call physicians or Dr. Zawislak's treatment of the patients at issue. Dkt. 4 at 6. If Memorial Hermann did not consider this evidence, a trier of fact could conclude that the reviewing committee did not make a reasonable effort to obtain the facts. Because Dr. Zawislak has pled a plausible claim that Memorial Hermann failed to meet the fourth requirement for HCQIA immunity, defendant's motion to dismiss on HCQIA immunity grounds must be denied.

**3. EMTALA Claim**

Dr. Zawislak has sought to invoke the jurisdiction of this court pursuant to 28 U.S.C. § 1331 which provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The federal law that Dr. Zawislak relies upon to assert jurisdiction is the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd (EMTALA). Dkt. 4 at 9. Memorial Hermann contends that Dr. Zawislak is not a whistleblower under EMTALA, and therefore has failed to allege a cause of action under 42 U.S.C. § 1395dd(d)(2)(A) and his claims should be dismissed pursuant to 12(b)(1). Dkt. 6 at 29.

The civil enforcement provisions of EMTALA create a private right of action for any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of the statute. *See* 42 U.S.C. § 1395dd(d)(2)(A). EMTALA also contains a section entitled "Whistleblower protections" which prohibits hospitals from taking adverse action against two classes of individuals: (1) physicians and other personnel who refuse to authorize the transfer of an individual with an emergency medical condition that has not been stabilized and (2) hospital employees who report a violation of EMTALA. *See* 42 U.S.C. § 1395dd(i). Memorial Hermann argues that because Dr. Zawislak did not allege that he refused to transfer any unstable emergency room patients he does not fall within the first class of individuals protected by the statute. Dkt. 6 at 27-28. The complaint alleges two occasions on which unstable emergency room patients were transferred to other trauma centers because Memorial Hermann's on-call trauma surgeon was either unwilling or unqualified to address the patient's injuries. Dkt. 4 ¶ 6 and ¶ 8. Dr. Zawislak does not allege that on either occasion he refused to transfer the patients. In the first instance, he alleges that he transferred the patient to another Memorial Hermann physician because he was unable to properly treat the patient's injuries. *Id.* at 2. He does not allege that at any point he refused to transfer the patient. *Id.* On the second occasion, he alleges that he "challenged" the on-call physician's transfer orders, but nevertheless transferred the patient to another trauma center. *Id.* at 2-3. Therefore, Dr. Zawislak does not fall within the first class of whistleblowers because he has failed to allege a situation in which he refused to authorize the transfer of an unstable patient.

Memorial Hermann also argues that Dr. Zawislak is not a hospital employee and, therefore, does not fall within the second class of protected individuals. Unfortunately, the court has not been able to identify any decisions construing the meaning of "employee" in the whistleblower provision.

7

Whether a physician with hospital privileges is considered an "employee" for the purposes of the whistleblower provision appears to be a case of first impression. The court does not agree that, because the act affirmatively prohibits hospitals from taking adverse action against "any hospital employee," it impliedly permits hospitals to take adverse action against physicians with hospital privileges who have observed and reported EMTALA violations. Such a result would seem to contradict the very purpose of EMTALA. The legislative purpose of the statute is best served by construing it to prohibit participating hospitals from penalizing physicians with medical privileges. EMTALA was enacted to prevent "patient dumping," which is the practice of refusing to treat patients who are unable to pay. *Marshall on Behalf of Marshall v. E. Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 322 (5th Cir. 1998); *Buras v. Highland Cmty. Hosp.*, 10-60867, 2011 WL 2650968 (5th Cir. July 7, 2011). A physician with medical privileges in a hospital's emergency room is in an advantageous position to observe whether a hospital is encouraging and instructing physicians to dump patients. "In rare cases where application of the literal terms of the statute will produce a result that is 'demonstrably at odds with the intentions of its drafters,' those intentions must be controlling." *See Miller v. Med. Ctr. of Sw. Louisiana*, 22 F.3d 626, 629 n.6 (5th Cir. 1994) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245 (1982)). Accordingly, the whistleblower provision must be construed to include physicians with medical privileges within the definition of "hospital employee". Defendant's motion to dismiss for failure to allege a cause of action under 42 U.S.C. § 1395dd(I) must be denied.

8

## CONCLUSION

Dr. Zawislak is not required to dispute the accuracy of the NPDB report with the Secretary of Health as a prerequisite to filing suit for defamation. Additionally, Dr. Zawislak has pled facts sufficient to overcome Memorial Hermann's statutory presumption of immunity and to establish an EMTALA violation. Accordingly, the motion to dismiss is DENIED.

It is so ORDERED.

Signed at Houston, Texas on October 26, 2011.

_____
Gray H. Miller
United States District Judge